UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

SUNVESTMENT ENERGY GROUP NY 64 LLC and
SARANAC LAKE COMMUNITY SOLAR, LLC,
individually and on behalf of all others similarly situated,    5:22-cv-1085 (BKS/TWD)

                          Plaintiffs,

v.

NATIONAL GRID USA SERVICES CO., INC. and
NIAGARA MOHAWK POWER CORPORATION,

                          Defendants.
_____

**Appearances:**

*For Plaintiffs:*
David E. Kovel
John R. Low-Beer
Andrew M. McNeela
Kirby McInerney LLP
250 Park Avenue, Suite 820
New York, NY 10177

Seth H. Handy
Handy Law LLC
42 Weybosset Street
Providence, RI 02903

*For Defendants:*
Richard H. Brown
Michael J. Fitzpatrick
Day Pitney LLP
605 Third Avenue, 31st Floor
New York, NY 10158

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.      INTRODUCTION**

Plaintiffs Sunvestment Energy Group NY 64 LLC ("Sunvestment") and Saranac Lake Community Solar, LLC ("Saranac") bring this proposed class action against Defendants National Grid USA Services Co., Inc. ("ServCo") and Niagara Mohawk Power Corporation ("Niagara Mohawk") (collectively, "National Grid") seeking a declaration that certain payments they make to Defendants are not taxable as income to Defendants. (Dkt. No. 1). Plaintiffs also seek injunctive and monetary relief and assert claims for breach of the covenant of good faith and fair dealing, restitution and unjust enrichment, and violation of New York Public Service Law § 65. (*See generally id.*). Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. No. 23). The parties filed responsive briefing. (Dkt. Nos. 30, 33, 34, 41, 42). For the following reasons, Defendants' motion is granted and the complaint is dismissed for lack of subject-matter jurisdiction.

**II.     FACTS[1]**

Defendants are subsidiaries of National Grid plc, a large publicly listed utility "focused on transmission and distribution of electricity and gas." (Dkt. No. 1, ¶ 21). Niagara Mohawk is a New York corporation "engaged in the regulated energy delivery business" which provides electric and natural gas service to customers in New York. (*Id.* ¶ 22). ServCo is a Massachusetts

---

[1] The facts are drawn from the complaint and the outside documents submitted by Defendants with their motion to dismiss and by Plaintiffs with their opposition. (Dkt. Nos. 23-2 through 23-10; Dkt. Nos. 30-1 through 30-7); *see Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (noting that a district court resolving a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "may refer to evidence outside the pleadings"). The Court also takes judicial notice of public Internal Revenue Service documents. *See Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) (noting that courts may take judicial notice of "public documents or matters of public record" and "records of administrative bodies" (citations omitted)). The Court assumes the truth of, and draws reasonable inferences from, the uncontroverted factual allegations. *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

2

corporation that "provides administrative and support services, including tax policy advice and tax accounting services" to Niagara Mohawk and other subsidiaries of National Grid plc. (*Id.* ¶ 23). ServCo "has a U.S. Tax Department that sets tax policies for the National Grid operating companies." (*Id.* ¶ 24). Plaintiffs are "independent renewable energy generators" who operate solar projects in New York. (*Id.* ¶¶ 1, 18–19).

Pursuant to the "New York Standardized Contract for Interconnection of New Distributed Generation Units" ("SCI"), National Grid "connects Plaintiffs' projects with the grid and subsequently purchases electricity generated by them." (*Id.* ¶ 3; *see also* Dkt. No. 23-7 (excerpts of the "New York Standardized Interconnection Requirements and Application Process For New Distributed Generators and Energy Storage Systems 5 MW or Less Connected in Parallel with Utility Distribution Systems" (the "Tariff"))).[2] Sunvestment signed an SCI with Niagara Mohawk on June 14, 2018 to operate a 4.06-megawatt solar project in Geneseo, New York, and an SCI was signed on behalf of Saranac on August 2, 2017 to operate a 2.06-megawatt solar project in Saranac Lake, New York. (Dkt. No. 1, ¶¶ 18–19). Under "applicable law and tariffs and the SCIs that Plaintiffs signed," Plaintiffs are required to pay National Grid "for any upgrades or modifications to the power grid that are necessary to interconnect their projects, and that thereafter become the property of National Grid." (*Id.* ¶ 5). These interconnections are known as "interties." (*Id.*; *see also id.* ¶ 55 ("Under the SCIs that National Grid signed with each Plaintiff . . . , Plaintiffs must pay all interconnection costs.")). More specifically, the SCIs Plaintiffs entered into provide the following:

> During the term of this Agreement, the Utility shall design, construct and install the Dedicated Facilities. The Customer shall be responsible for paying the incremental capital cost of such

---

[2] Plaintiffs allege that Defendants "compete with Plaintiffs" and therefore "have an interest in increasing [Plaintiffs'] costs." (*Id.* ¶¶ 4, 47–54; *see id.* ¶¶ 39–46 (alleging that "investor-owned electric utilities" view governmental policies supporting the distributed generation of renewable energy as a "threat to their profitability")).

3

> Dedicated Facilities attributable to the Customer's Unit. All costs associated with the operation and maintenance of the Dedicated Facilities after the Unit first produces energy shall be the responsibility of the Utility.

(Dkt. No. 23-8, at 5; Dkt. No. 23-10, at 5; *see also* Dkt. No. 23-7, at 5 (Tariff providing that "[a]pplicants are responsible for payment of utility system modification cost estimates")).

National Grid claims that it must pay income tax on these payments ("interconnection payments" or "system modification costs"). (Dkt. No. 1, ¶ 6). Accordingly, National Grid "passes through" to Plaintiffs an amount "equal to the purported income tax minus National Grid's tax savings from depreciating the newly acquired assets" (the "tax gross-up"). (*Id.*). In 2019, National Grid invoiced Sunvestment $315,931, which included an "Income Tax Liability" amount of $17,556.76 for "upgrades to interconnect" Sunvestment's project. (*Id.* ¶ 18). Sunvesment paid the invoice. (*Id.*). Similarly, National Grid invoiced Saranac for $336,390, including an "Income Tax Liability" amount of $40,000.47 (*Id.* ¶ 19). Saranac "paid the tax." (*Id.*). Plaintiffs dispute that National Grid in fact owes income tax on the interconnection payments Plaintiffs make. (*E.g.*, *id.* ¶ 4 ("Defendants wrongfully passed through to Plaintiffs and the Plaintiff Class a charge related to a purported federal tax that was not actually owed.")). According to Plaintiffs, National Grid "continues to charge Plaintiffs for the tax gross-up on the cost of the transmission upgrades and annual operations and maintenance charges for those upgrades." (*Id.* ¶ 93).

A.  **Relevant Tax Law and IRS Guidance**

The Internal Revenue Code provides: "Except as otherwise provided in this subtitle, gross income means all income from whatever source derived." 26 U.S.C. § 61(a). Section 118, in turn, provides:

> (a) **General Rule**. In the case of a corporation, gross income does not include any contribution to the capital of the taxpayer.

4

> (b) **Exceptions**. For purposes of subsection (a), . . . the term "contribution to the capital of the taxpayer" does not include—
>> (1) any contribution in aid of construction or any other contribution as a customer or potential customer . . . .

*Id.* § 118(a), (b)(1). Plaintiffs allege that Section 118 "and its legislative history . . . state explicitly that [contributions in aid of construction ("CIACs")] are taxable because they are payments made by customers to enable utility service" and are in effect "advance payments for service." (Dkt. No. 1, ¶ 60 (emphasis omitted)). Independent generators like Plaintiffs, however, "are not customers . . . but rather sellers of electricity *to* the utility." (*Id.*). Guidance issued by the IRS in 1988 similarly distinguishes between payments by customers and contributions by independent generators:

> In a CIAC transaction the purpose of the contribution of property to the utility is to facilitate the sale of power by the utility to a customer. In contrast, the purpose of the contribution by a Qualifying Facility [under the Public Utilities Regulatory Policies Act of 1978] to a utility is to permit the sale of power by the Qualifying Facility to the utility. Accordingly, the fact that the 1986 amendments to Code section 118(b) render CIAC transactions taxable to the utility does not require a similar conclusion with respect to transfers from Qualifying Facilities to utilities.

Notice 88-129, 1988 WL 561200, at *1, 1988 IRB LEXIS 3720, at *2–3 (IRS 1988).

Notice 2016-36, the most recent IRS guidance on the issue, "provides a safe harbor for transfers of property from either an electricity generation or cogeneration facility or an energy storage facility to a regulated public utility, used to facilitate the transmission of electricity over the utility's transmission system, to be treated as a contribution to the capital of a corporation under § 118(a), and not a contribution in aid of construction (CIAC) under § 118(a)." Notice 2016-36, 2016 WL 3211403, 2016 IRB LEXIS 383, at *1 (IRS 2016). The parties' dispute regarding whether interconnection payments are includible in gross income is a dispute over whether Notice 2016-36's safe harbor extends only to independent generation projects that

5

connect to a utility's transmission system, as National Grid contends, or extends also to projects that connect to a utility's distribution system, as Plaintiffs contend. (*See* Dkt. No. 1, ¶ 64; *id.* ¶ 65 (explaining that a utility's transmission network "carries electricity over long distances through high-voltage wires" whereas a distribution network "carries that same power to end users over smaller wires at lower and safer voltages")). Generally, National Grid takes the position that the use of the words "transmit" and "transmission" in Notices 88-129 and 2016-36 indicates that payments for interconnections to a utility's distribution network are includible in the utility's gross income. (*Id.* ¶ 64). As Plaintiffs point out, however, Notice 2016-36 states: "[A] generator (such as a solar or wind farm) may contribute an intertie to a utility that qualifies under the new safe harbor even if the generator is interconnected with a distribution system, rather than a transmission system, if all [other] requirements [for the safe harbor] . . . are met." Notice 2016-36, 2016 WL 3211403, 2016 IRS LEXIS 383, at *14.

    **B.    Prior Attempts to Resolve the Tax Dispute**

On June 28, 2016, following the issuance of Notice 2016-36, Robert Ermanski, National Grid's Director of U.S. Tax Research & Planning Office, emailed David Selig, the principal author of Notice 2016-36. (Dkt. No. 1, ¶ 72). Mr. Ermanski's email memorialized a phone call in which Mr. Selig "confirmed that Notice 2016-36 was indeed intended to cover transactions of this type," i.e., transactions involving "distribution" system interconnections. (*Id.*). Mr. Ermanski wrote that the "continued use of the restrictive term 'transmission'" in Notice 2016-36 "may cause taxpayers to conclude incorrectly that the new safe harbor is only permitted when electricity which passes through a 'distribution' system intertie is ultimately delivered to the utility's 'transmission' system" and "urge[d] IRS to provide . . . clear written guidance" clarifying this point. (*Id.* (emphasis omitted)).

Following the issuance of Notice 2016-36, National Grid commissioned an opinion from Ernst & Young LLP regarding the application of the safe harbor to interconnections with a distribution system. (*Id.* ¶ 80). Ernst & Young concluded that "strict construction of Notice 2016-36 dictates that the use of the safe harbor set forth in such notice is limited to transfers of property to a regulated public utility that are then used by such utility to facilitate the transmission of electricity over the utility's transmission system." (*Id.*; *see id.* (alleging that Ernst & Young's analysis was "strained, result-oriented, and fundamentally flawed")). However, Ernst & Young acknowledged that it was "possible a compelling position could be developed" in support of Plaintiffs' interpretation of the safe harbor. (*Id.* ¶ 82).

Plaintiffs further allege that independent generators have "unsuccessfully challenged the tax gross-up in administrative proceedings" before the public utility commissions in Rhode Island and Massachusetts. (*Id.* ¶ 83). In a proceeding commenced in January 2014 before the Rhode Island Public Utilities Commission ("RIPUC"), National Grid argued that "RIPUC lacked jurisdiction to decide the federal tax question" and "could only decide whether the charge was 'reasonable,' and not whether National Grid actually owed the tax." (*Id.* ¶ 84).[3] RIPUC issued a final order on November 27, 2017, holding that "the pass-through tax charges were reasonable in this proceeding." (*Id.* ¶ 87); *see In re Petition of Wind Energy Dev., LLC*, No. 4483, 2017 WL 6295387 (RIPUC Nov. 27, 2017).[4] On appeal to the Rhode Island Supreme Court, National Grid and RIPUC "conceded that any purported uncertainty in the IRS guidance could be resolved if National Grid filed an administrative claim for a refund with the IRS." (Dkt. No. 1, ¶ 89).

---

[3] The parties attempted to settle the dispute by obtaining a private letter ruling ("PLR") from the IRS, but "the IRS declined to issue a PLR on the ground that it would soon issue guidance on the subject." (*Id.* ¶ 85). The IRS thereafter issued Notice 2016-36. (*Id.*).

[4] No Lexis cite available.

7

However, "despite repeated requests," National Grid has refused to do so. (*Id.*; *see also id.* ¶ 11 ("National Grid could simply not pay this tax, without risking any penalty—or it could pay it and seek a refund. Unlike any other rational taxpayer, it has done neither.")). The Rhode Island Supreme Court affirmed RIPUC's ruling on June 1, 2020. (*Id.* ¶ 90); *see ACP Land, LLC v. R.I. Pub. Utils. Comm'n*, 228 A.3d 328 (R.I. 2020). The court held that National Grid is "entirely reasonable in believing that it continues to owe the interconnection tax at issue in this case to the IRS and in, therefore, passing that tax on to petitioners," but noted its "fervent hope that the IRS will provide clear and concise guidance to the[] parties in the near future." *ACP Land*, 228 A.3d at 338.

      C.     **IRS 2022–2023 Priority Guidance Plan**

On November 4, 2022, the Department of the Treasury released the 2022–2023 Priority Guidance Plan for the Office of Tax Policy and Internal Revenue Service. Dep't of Treasury, Office of Tax Policy & Internal Revenue Service 2022–2023 Priority Guidance Plan (Nov. 4, 2022), *available at* https://www.irs.gov/pub/irs-utl/2022-2023-pgp-initial.pdf. The Priority Guidance Plan contains "guidance projects that are priorities for allocating Treasury Department and Service resources during the 12-month period from July 1, 2022 through June 30, 2023." *Id.* at 1. The listed projects "will be the focus" of efforts during the plan year, but "the plan does not provide any deadline for completing the projects." *Id.* at 1–2. Among the projects in the Priority Guidance Plan is to issue "[g]uidance under § 118 to clarify the safe harbor under Rev. Proc. 2016-36 regarding distribution lines." *Id.* at 9. To date, the IRS has not issued guidance clarifying the safe harbor in Notice 2016-36. *See* IRS, IRS Online Bulletins, https://www.irs.gov/irb (last accessed August 10, 2023).

### III. STANDARD OF REVIEW

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon*, 752 F.3d at 243 (citation omitted). The Court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

### IV. ANALYSIS

Plaintiffs' complaint alleges four causes of action for: (1) a declaratory judgment pursuant to 28 U.S.C. § 2201(a) (Count I), (2) breach of the covenant of good faith and fair dealing (Count II), (3) restitution and unjust enrichment (Count III), and (4) unjust and unreasonable charges in violation of New York Public Service Law § 65 (Count IV). (Dkt. No. 1, ¶¶ 96–122). In addition to declaratory relief, Plaintiffs seek an order enjoining Defendants from "charging a tax gross-up adder on renewable energy projects" and monetary damages. (*Id.* at 33). Defendants move to dismiss the complaint in its entirety. (*See generally* Dkt. No. 23-1).

#### A. Declaratory Judgment Act

Plaintiffs seek a declaration under the Declaratory Judgment Act ("DJA") that "payments for interconnection to National Grid's distribution system by independent generators of renewable energy who meet the criteria of the IRS safe harbor are not taxable as income to

9

National Grid." (Dkt. No. 1, at 33; *see id.* ¶¶ 96–101 (Count I)). Defendants argue that Count I should be dismissed because (1) the DJA contains an exception for federal taxes which deprives the Court of authority to grant the requested relief, (2) the Anti-Injunction Act ("AIA") bars claims restraining the assessment or collection of taxes, (3) there is no case or controversy under the DJA, and (4) even if the Court concludes that it is not barred from considering Count I, the Court should exercise its discretion and decline to adjudicate it. (Dkt. No. 23-1, at 14–22). Plaintiffs respond that the Court has subject-matter jurisdiction over and can adjudicate Count I because, under the exception in *South Carolina v. Regan*, 465 U.S. 367 (1984), Plaintiffs have "no alternative legal avenue to contest the taxes being passed through to them" and that there is a case or controversy. (Dkt. No. 33, at 16–20).

The DJA provides:

> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). As an initial matter, the Court must assure itself that it has subject-matter jurisdiction over this action. *See Bhaktibhai-Patel v. Garland*, 32 F.4th 180, 187 (2d Cir. 2022) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." (citation omitted)). It is well-settled that the DJA "does not by itself confer subject matter jurisdiction on the federal courts." *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 442 F.3d 767, 769 (2d Cir. 2006); *see* 28 U.S.C. § 2201(a) (limiting a court's authority to "declare the rights and other legal relations of any interested party" to

"case[s] of actual controversy *within its jurisdiction*" (emphasis added)). There therefore "must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Servs. Corp.*, 442 F.3d at 769 (citing *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996)); *see also DME Constr. Assocs., Inc. v. United States*, No. 15-cv-4322, 2016 WL 2992131, at *3, 2016 U.S. Dist. LEXIS 67390, at *7 (E.D.N.Y. May 23, 2016) (noting that the DJA "provides a specific remedy for plaintiffs who are alleging a claim based on a substantive source of rights, but does not itself confer any substantive rights" (citations omitted)); *In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993) (noting that the DJA does not "provide an independent cause of action" and that its "operation is procedural only—to provide a form of relief previously unavailable" (citation omitted)).

"To decide whether federal jurisdiction exists to entertain a claim for declaratory relief, courts . . . 'conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit.'" *Leopard Marine & Trading, Ltd. v. Easy Street Ltd.*, 896 F.3d 174, 182 (2d Cir. 2018) (quoting *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 67 (2d Cir. 2012)); *see Garanti Finansal*, 697 F.3d at 67 ("[I]f, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." (citation omitted)); *see also Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 539 (9th Cir. 1985) (framing the jurisdictional question as "whether, absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court"), *receded from on other grounds*, *Continental Cas. Co. v. Robsac Indus.*, 947 F.2d 1367 (9th Cir. 1991).

11

Here, Plaintiffs seek a declaration that certain payments made to National Grid pursuant to a contract are not includible in National Grid's taxable income. Conceptually realigning the parties as they would appear in a coercive suit results in a scenario where Plaintiffs fail to pay the tax gross-up charge[5] and Defendants bring a breach of contract action to recover the charges. The federal tax issue would arise only as a defense to the breach of contract claim which, under the well-pleaded complaint rule, is insufficient to invoke the federal question jurisdiction of a federal court. In *Skelly Oil Co. v. Phillips Petroleum Co.*, the parties entered into a contract which was conditional on a third party's obtaining a "certificate of public convenience and necessity." 339 U.S. 667, 669 (1950). Skelly Oil terminated the contract on the ground that a permit obtained by the third party was not such a certificate. *Id.* at 669–70. Phillips, the declaratory judgment plaintiff, sought a declaration that the parties' contract was binding because, under the relevant federal statute, the permit was in fact a "certificate of public convenience and necessity." *Id.* at 670–71. The Supreme Court held that there was no federal question jurisdiction because, had the suit been presented as a traditional coercive suit for breach of contract, "[w]hatever federal claim Phillips may be able to urge would in any event be injected into the case only in anticipation of a defense to be asserted by petitioners." *Id.* at 672; *see also Garanti Finansal*, 697 F.3d at 66–67 (discussing *Skelly Oil*). Similarly, here, if either

---

[5] Although Plaintiffs allege that they have already paid certain tax gross-up charges and argue that declaratory relief is available to address past harms, (Dkt. No. 33, at 19–20 & n.8), the Court agrees with Defendants that declaratory relief is forward looking and is not appropriate to address past harms where there is no likelihood of ongoing or future injury, *see, e.g.*, *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021) (noting that plaintiffs seeking injunctive or declaratory relief "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that [they] will be injured in the future" (citation omitted)); *Tang Cap. Partners, LP. v. BRC Inc.*, No. 22-cv-3476, --- F. Supp. 3d ---, 2023 WL 2396635, at *20, 2023 U.S. Dist. LEXIS 39096, at *61–62 (S.D.N.Y. Mar. 8, 2023) ("Declaratory judgments may provide relief from uncertainty when they are directed towards prospective relief, but declaratory judgments resolving disputes over past acts are inappropriate." (citations omitted)). Here, the complaint does allege ongoing harm and seek prospective, forward-looking relief. (*See* Dkt. No. 1, ¶ 93 ("National Grid continues to charge Plaintiffs for the tax gross-up on the cost of the transmission upgrades and annual operations and maintenance charges for those upgrades."); *id.* at 33 (requesting a declaration that payments meeting certain specified criteria "are not taxable as income to National Grid")).

party sued the other for damages under or specific performance of the contracts at issue, the federal tax issue would arise only as a defense to those claims.

Accordingly, Count I brought under the DJA does not invoke the Court's federal question jurisdiction. The Court next considers whether it has "arising under" jurisdiction over any of Plaintiff's state-law claims.

### B.     Jurisdiction Over State-Law Claims

Plaintiffs argue that the Court has federal question jurisdiction over their state-law claims because those claims "turn on a substantial issue of federal law," namely "whether the safe harbor applies to interconnection payments when that interconnection is to distribution lines rather than transmission lines." (Dkt. No. 33, at 20–21).

The federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But "[e]ven where a claim finds its origins in state rather than federal law," "'arising under' jurisdiction still lies in 'a special and small category of cases' in which the federal issue is: '(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.'" *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 63 (2d Cir. 2023) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)); *see generally Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). Jurisdiction lies in such cases because the satisfaction of these four elements "indicat[es] a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313. The parties appear to agree that the federal tax issue raised by Plaintiffs' state-law claims is "actually disputed" but contest the remaining three elements for "arising under" jurisdiction.

1. **Necessarily Raised**

A federal issue is "necessarily raised" by a state-law claim when "a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action." *Solomon*, 62 F.4th at 64 (quoting *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (2d Cir. 2021)); *see also New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 315–16 (2d Cir. 2016) ("A state-law claim 'necessarily' raises federal questions where the claim is affirmatively 'premised' on a violation of federal law." (citing *Grable*, 545 U.S. at 314)). Here, the Court concludes that all three state-law claims, as pleaded, necessarily raise the federal tax issue of whether payments for interconnections to National Grid's distribution system otherwise meeting the criteria of the IRS safe harbor are taxable as income to National Grid because a determination that such payments are *not* taxable as income to National Grid is necessary to Plaintiffs' success on those claims. *See Jacobson*, 824 F.3d at 317 (finding that a federal law issue was necessarily raised where "the complaint predicated liability on the assertion that IRS Form 1066 filings were false because—and only because—the Wells Fargo trusts did not qualify for the REMIC status they obtained under federal law" and the plaintiff therefore had to "prove at least that the trusts did not qualify under federal law"); *Qatar v. First Abu Dhabi Bank PJSC*, 432 F. Supp. 3d 401, 414 (S.D.N.Y. 2020) (noting that state-law claims in cases meeting the *Grable* test "*predicated liability* on the application of federal law").

Plaintiffs allege that National Grid breached the implied covenant of good faith and fair dealing by "charg[ing] Plaintiffs for tax gross-ups despite the fact that their interconnection payments were not taxable to National Grid as income" and "ignoring clear IRS guidance" on the issue. (Dkt. No. 1, ¶¶ 107–08). Similarly, although the complaint sets forth multiple possible theories for Plaintiffs' entitlement to restitution, (*id.* ¶¶ 111–18), any claim that National Grid was unjustly enriched and that Plaintiffs are entitled to restitution would require Plaintiffs to

14

establish that the interconnection payments at issue were not taxable as income to National Grid. Finally, Plaintiffs allege that Defendants violated New York Public Service Law § 65 because the tax gross-ups "are more than allowed by law and are therefore unjust and unreasonable," (*id.* ¶ 121), thus requiring Plaintiffs to establish that the interconnection payments at issue are not taxable as income to National Grid. Notably, Plaintiffs do not advance any theory of liability on these state-law claims which does not depend on a determination that the interconnection payments are not taxable as income. *Cf. State ex rel. Am. Advisory Servs., LLC v. Egon Zehnder Int'l, Inc.*, 592 F. Supp. 3d 183, 205 (S.D.N.Y. 2022) ("Where a federal issue is present as only one of multiple theories that could support a particular claim, this is insufficient to create federal jurisdiction." (ellipses and citation omitted)).

      Defendants argue that the state-law claims do not necessarily raise the federal tax issue because the claims hinge on "whether Defendants acted reasonably" and do "not necessarily require a determination of whether the safe harbor applies." (Dkt. No. 34, at 10; *see also* Dkt. No. 42, at 7). Defendants point to *ACP Land*, in which the Supreme Court of Rhode Island affirmed RIPUC's determination that National Grid was "reasonable in believing that it owes a tax to the IRS on the interties between the petitioners' solar and wind systems and [National Grid's] distribution system—and in, consequently, passing that tax on to petitioners." 228 A.3d at 333. However, there is no indication that RIPUC adjudicated any breach of contract or unjust enrichment claim. *See id.* at 333–34 ("emphasiz[ing] that [the court was] not presented with a question as to whether or not [National Grid] owes the interconnection tax to the IRS, but only whether [National Grid] is reasonable in believing that it owes the tax"). As discussed above, Plaintiffs' success on its state-law claims, as those claims are pleaded, would require a determination in Plaintiffs' favor on the federal tax issue, which is therefore necessarily raised.

15

### 2. Substantial

For a federal issue to be "substantial," it is "not enough that the federal issue be significant to the particular parties in the immediate suit." *Gunn*, 568 U.S. at 260. Rather, the "substantiality inquiry under *Grable* looks instead to the importance of the issue to the federal system as a whole." *Id.* The Second Circuit has identified "characteristics that in some cases have signaled against substantiality" as including "the retrospective nature of a claim, the propriety of resolving the federal dispute in a state forum, and the absence of a federal remedy." *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1028 (2d Cir. 2014). "[S]ubstantiality must be determined based on a careful, case-by-case judgment." *Id.* (citing *Grable*, 545 U.S. at 317–18). Here, Plaintiffs argue that the federal tax issue "underlying" their state-law claims is substantial because "[t]he Court's resolution would directly affect hundreds of absent class members and have a precedential impact on an important issue nationwide." (Dkt. No. 33, at 21; *see* Dkt. No. 1, ¶¶ 27, 31). Defendants respond that the federal issue is not substantial because the IRS is not a party to this case and would not be bound by any judgment. (Dkt. No. 34, at 9–10; Dkt. No. 42, at 7).[6]

The Court concludes that the federal tax issue raised by Plaintiffs' state-law claims is not substantial. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007), is instructive. There, the plaintiffs sued a company in which they were shareholders for fraudulent misrepresentation and breach of contract. *Id.* at 557–58. The plaintiffs' theory of liability on these state-law claims was that the defendant company had violated a provision of the tax code,

---

[6] To the extent Defendants argue that a federal issue can *never* be substantial in the absence of a government party, the Court disagrees. As Plaintiffs point out, in *Grable* itself, the Supreme Court found the disputed tax issue of whether the petitioner "was given notice within the meaning of the federal statute" to be substantial even though the dispute before the Court was between private parties and the government was not a party. *See* 545 U.S. at 315. Indeed, federal courts have found "arising under" jurisdiction over state-law claims between private parties. *See, e.g.*, *Jacobson*, 824 F.3d at 317–18; *Egon Zehnder*, 592 F. Supp. 3d at 208–10.

16

26 U.S.C. § 312(n)(1), by improperly capitalizing certain construction expenses. *Id.* at 558, 569. The plaintiffs argued that the defendant's improper capitalization resulted in the over reporting of dividends, which resulted in increased tax liability for the shareholders. *See id.* The Sixth Circuit, although having "little difficulty" in concluding that the parties actually disputed the interpretation of the tax statute, held that the federal interest was not substantial. *Id.* at 570–73. The case did not involve a federal agency or a "question of whether a government agency has complied with a statute or regulation." *Id.* at 570; *see Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (noting that the dispute in *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute"). Further, although the federal government "may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection." *Mikulski*, 501 F.3d at 570. Here, as in *Mikulski*, the government's ability to collect taxes from National Grid or any other taxpayer "is not affected by the resolution of the dispute" between the parties. *Id.* ("The government is free to interpret and apply the tax code as it sees fit, without the slightest regard for this lawsuit."). Any decision in this case would not conclusively resolve the issue for the IRS or for future private litigants and thus would have little impact on the federal system.

   The cases on which Plaintiffs rely are distinguishable. In *Jacobson*, the disputed federal issue was whether certain trusts qualified for the Real Estate Mortgage Investment Conduit ("REMIC") status they had acquired under federal law which exempts such trusts from federal income taxation. *See* 824 F.3d at 310–12, 317. In finding the issue substantial, the Second Circuit noted that the "statute, the implementing regulations, and the additional regulatory guidance" governing REMICs "are necessarily complex" and "govern what is now a trillion-dollar national

17

market in mortgage-backed securities." *Id.* at 317–18. The plaintiff's claims "raise[d] a threshold question of law relating to mortgage-backed securities generally," and therefore "minimizing uncertainty over the tax treatment of mortgage-backed securities" justified resort to a federal forum. *Id.* at 318; *see also id.* at 312 (recounting that the complaint alleged that the Wells Fargo trusts' unpaid tax obligations were estimated to total $1.5 billion). And in *Ego Zehnder*, the federal issue was substantial because the "allocation of income among affiliates of a multinational corporation raises among the most serious and sensitive questions of international taxation." 592 F. Supp. 3d at 209. The issue "implicate[d] two of the most central issues for any sovereign entity—its ability to raise revenue to conduct the affairs of state and the sovereign entity's foreign relations with other sovereigns." *Id.* The present case, by contrast, does not involve a trillion-dollar nationwide market or such important issues as the government's ability to raise revenue or conduct relations with other sovereigns. Rather, Plaintiffs' state-law claims present ordinary questions relating to contractual relationships between private parties.

Accordingly, the Court concludes that the disputed federal tax issue is not substantial and therefore does not reach the question of whether the state-law claims would be "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Because the *Grable* test for "arising under" jurisdiction is not satisfied, the Court lacks subject-matter jurisdiction over this action and must dismiss the complaint without prejudice.[7]

---

[7] The Court notes that Plaintiffs sought leave to add substantive claims against Defendant ServCo if "the common law claims require contractual privity." (Dkt. No. 33, at 24). Plaintiffs, however, have not sought leave to amend with respect to the jurisdictional deficiencies, and there is no indication in this record that any amendment could cure the lack of subject matter jurisdiction. The Court has therefore not granted leave to amend. *See Porat v. Lincoln Towers Community Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (finding no abuse of discretion in entering judgment without leave to amend when the plaintiff "did not advise the district court how the complaint's defects would be cured").

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants National Grid USA Services Co., Inc. and Niagara Mohawk Power Corporation's motion to dismiss (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that the complaint (Dkt. No. 1) is **DISMISSED without prejudice** for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

Dated: <u>August 11, 2023</u>
Syracuse, New York

*[signature]*
Brenda K. Sannes
Chief U.S. District Judge